UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION

JENI CLINE,

 -vs-                                                                              Case No.
                                                                                   Hon.
NCO FINANCIAL SYSTEMS INC,
APEX FINANCIAL MANAGEMENT, LLC,
CHARLES VINCENT,
       Defendants.

## COMPLAINT & JURY DEMAND

*Jeni Cline brings the following claims for relief:*

### Jurisdiction

1. This court has jurisdiction under the FDCPA, 15 U.S.C. §1692k(d) and 28 U.S.C. §§1331,1337.

2. This court may exercise supplemental jurisdiction over the related state law claims arising out of the same nucleus of operative facts which give rise to the Federal law claims.

### Parties

3. The Defendants to this lawsuit are as follows:

    a. NCO Financial Systems Inc. ("NCO") which is a corporation doing business in Michigan.

    b. Apex Financial Management, LLC ("Apex") which is a corporation doing business in Michigan.

    c. Charles Vincent, an individual debt collector and agent of Apex.

**Venue**

4. The transactions and occurrences which give rise to this action occurred in Macomb County.

5. Venue is proper in the Eastern District of Michigan.

**General Allegations relating to NCO**

6. Some time prior to April of 2009, NCO was engaged by Cigpf I Corp. ("Cigpf") to collect an account ("account") allegedly owed by Jeni Cline.

7. Some time in April 3, 2009, NCO communicated with Jeni Cline for the first time in an attempt to collect the Cigpf account.

8. From that date, NCO embarked on a campaign to harass, oppress and abuse Plaintiff to pay the debt by causing her telephone to ring or by engaging her in telephone conversation repeatedly and/or continuously, specifically, NCO called Plaintiff near daily and on many days, up to four times in one day.

9. In 2009, NCO communicated with Plaintiff's mother, a third party, on multiple occasions in violation of 15 U.S. C. § 1692b and c.

10. At some point in 2009, NCO began calling Plaintiff to collect on a HSBC account.

11. NCO called Plaintiff near daily and on many days, up to four times in one day to collect on the NCO account.

12. NCO's communications continue to this date, the last call having been placed by NCO on September 26, 2009.

**General Allegations relating to Apex**

13. Some time in July 2009, Apex was engaged to collect the same alleged Cigfi account that NCO sought to collect from Plaintiff.

14. In July 2009, Apex communicated with Plaintiff for the first time through its debt collector

Charles Vincent.

15. From that date, Apex embarked on a campaign to harass, oppress and abuse Plaintiff to pay the debt by causing her telephone to ring or by engaging her in telephone conversation repeatedly and/or continuously, specifically, Apex called once or twice a day.

16. On August 15, 2009, Apex sent a fax to Plaintiff's employer, The Kroger Co. ("Kroger"), attached as Exhibit A.  The fax was a form questionnaire which requested that Kroger verify Plaintiff's employment, provide the employer's FEIN #, identify Plaintiff's date of hire, whether she was full time or part time, title, salary, hourly or commission and whether there were any active or pending *garnishments*.  The fax further requested Kroger's *payroll address* and *payroll contact*.

17. The Kroger fax machine is in a public space accessible to employees and customers alike.

18. The fax disclosed Plaintiff's full social security number (redacted on Exhibit A).

19. Charles Vincent was listed as the contact person at Apex on the fax.

20. Apex directed the fax to four different individuals at Kroger including two former managers, the pharmacist and a cashier.

21. Kroger received the communication.

22. The fax communication sought information other than location information and thus was an unlawful communication with third parties in violation of 15 U.S.C. §1692b and c(b).

23. Further, the communication failed to comply with the provisions of 15 U.S.C. §1692b.

24. Further, because the fax sought wage information, garnishment information and the payroll address and contact, the communication constitutes a representation or implication that nonpayment of the debt would result in the garnishment of Plaintiff's wages.

25. Moments later on August 15, Apex faxed the same document to the Kroger fax line, thus

        violating the same provisions set forth in paragraphs 21-23 above.

26. Additionally, the communication was a communication with third parties more than one time, in violation of 15 U.S.C. §1692b and c(b).

27. On August 15, 2009, Charles Vincent from Apex called for Plaintiff on the Kroger phone line.

28. Plaintiff was called to the line by a co-worker.

29. Vincent attempted to collect the account from Plaintiff on behalf of Apex.

30. Plaintiff told Vincent that she was at work and not allowed to take the phone call at work.

31. Vincent continued to seek to collect the account.

32. Plaintiff finally discontinued the call.

33. On the very next day, August 16, 2009, Vincent called Plaintiff back on the Kroger phone line.

34. The call to Kroger was to a place known by Apex to be inconvenient for the Plaintiff.

35. The call to Kroger was to Plaintiff's place of employment and Apex knew Plaintiff was prohibited from taking such calls at work.

36. On August 17 and 21, 2009, Apex faxed the same document to Kroger, the only change was that "2nd Request" was handwritten at the top and "Time Sensitive" was circled.

37. On August 21, 2009, Apex sent another fax to Kroger, the same document as in Exhibit A.

38. These communications were in violation of the provisions set forth in paragraphs 21-23 above.

39. Further, the faxes were communications with third parties more than one time, in violation of 15 U.S.C. §1692b and c(b).

40. On August 19 and 20, 2009 and September 17, 2009, Apex faxed another form

questionnaire. This one was labeled "Employment Verification Form" and was addressed, "Dear Employer:"

41. It further requested that Kroger confirm Plaintiff's employment and return the form to Apex. Apex requested date of hire, date of termination, salary, pay schedule, occupation, full or part time status, department and the name and title of the person completing the form (Exhibit B).

42. Kroger received the faxes.

43. The communications were in violation of the provisions set forth in paragraphs 21-23 above.

44. Apex sent faxes on the following dates all asking for employment and wage information: September 17, with "2nd Request handwritten at top (three faxes), September 21 with 3rd Request handwritten at top (2 faxes) and all with the phrase "Time Sensitive" circled. Apart from these differences, the faxes were the same as Exhibit A.

45. The communications were each in violation of the provisions set forth in paragraphs 21-23 above.

46. Further, the faxes were communications with third parties more than one time, in violation of 15 U.S.C. §1692b and c(b).

47. On September 22, 2009, Vincent called and left a voicemail message for Plaintiff on her cell phone.

48. In the call, Vincent demanded that Plaintiff call him back or Apex would proceed to the "next step."

49. On September 23, 2009, Vincent called and left a voicemail message for Plaintiff on her cell phone.

50. Vincent failed to state that the communication was from a debt collector.

51. He stated that he was not getting a response from Kroger to the faxes he had been sending.

52. He also said he was being asked to follow up with Kroger.

53. Additionally, Vincent stated that they are asking me to "travel down a different road" to get this taken care of assuming you are not going to cooperate.

54. Apex may not lawfully contact Kroger and thus Vincent's statement constitutes a threat to take action that cannot legally be taken.

55. Apex's communications on September 22 and 23 in conjunction with the earlier faxes constituted threats to garnish Plaintiff's wages.

56. The calls on September 23, 2009, and the multiple faxes to Plaintiff's place of employment were part of a pattern of conduct of repeated and continuous phone calls designed to harass, oppress and abuse Plaintiff.

57. Plaintiff was embarrassed by the frequent contact with her employer and greatly concerned that Apex would reveal further private financial information to her employer and co-workers.

58. On September 24, 2009, Plaintiff called Vincent and advised him not to contact her place of employment.

59. Vincent indicated that he would continue to contact her employer.

60. Further, he said it was permissible for him to contact human resources in order to obtain the information requested in the employment verification form.

61. A debt collector is prohibited from seeking any other information but location information from a third party.

62. Vincent's statement that it was permissible to contact human resources to obtain information was a false, deceptive and/or misleading representation and a threat to take action that may

not be legally taken.

63. A debt collector is prohibited from contacting a third party more than once.

64. Vincent's statement that it was permissible to contact Kroger when he had already communicated with Kroger on multiple occasions was a false, deceptive and/or misleading representation and a threat to take action that may not be legally taken.

65. Vincent also said the creditor on the account was "SST."

66. The written notice of the debt provided by Apex to Plaintiff states the creditor of the account is "Cigpfi."

67. Either the written notice contains a material misrepresentation or Vincent misrepresented the creditor in his September 24 statement to Plaintiff.

68. In 2009, Apex communicated with Plaintiff's mother, a third party, on multiple occasions in violation of 15 U.S.C. § 1692b and c.

69. As a result of the acts alleged above, Plaintiff has suffered damages.

## COUNT I – Fair Debt Collection Practices Act (NCO)

70. Plaintiff incorporates the preceding allegations by reference.

71. At all relevant times NCO – in the ordinary course of its business – regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

72. NCO is a "debt collector" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a(6).

73. At all times relevant to this complaint, NCO sought to collect a "consumer" debt from Plaintiff.

74. NCO actions to collect this alleged debt from Plaintiff violated the provisions of the FDCPA including, but not limited to: 15 U.S.C. §1692b, c and d.

75. Plaintiff has suffered damages as a result of these violations of the FDCPA.

### COUNT II – Michigan Occupational Code (NCO) as alternative to claims under the Michigan Collection Practices Act

76. Plaintiff incorporates the preceding allegations by reference.

77. NCO is a "collection agency" as that term is defined in the Michigan Occupational Code ("MOC"), M.C.L. § 339.901(b).

78. Plaintiff is a debtor as that term is defined in M.C.L. § 339.901(f).

79. NCO 's foregoing acts in attempting to collect this alleged debt against Plaintiff constitute violations of the MOC including but not limited to the following: M.C.L. § 339.915(n).

80. Plaintiff has suffered damages as a result of these violations of the MOC

81. These violations of the MOC were willful.

### COUNT III – Michigan Collection Practices Act (NCO)as alternative to claims under the Michigan Occupational Code

82. Plaintiff incorporates the preceding allegations by reference.

83. NCO is a "regulated person" under the Michigan Collection Practices Act ("MCPA"), M.C.L. § 445.251(g)(xi).

84. NCO 's foregoing acts in attempting to collect this alleged debt against Plaintiff constitute violations of the Michigan Collection Practices Act, M.C.L. § 445.251 *et seq.* including, but are not limited to, the following: § 445.252(n).

85. Ms. Cline has suffered damages as a result of NCO's violations of the Michigan Collection Practices Act.

86. NCO's violations of the Michigan Collection Practices Act were willful.

### COUNT IV – Fair Debt Collection Practices Act (Apex)

87. Plaintiff incorporates the preceding allegations by reference.

88. At all relevant times Apex – in the ordinary course of its business – regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

89. Apex is a "debt collector" under the FDCPA, 15 U.S.C. §1692a(6).

90. At all times relevant to this complaint, Apex sought to collect a "consumer" debt from Plaintiff.

91. Apex's actions to collect this alleged debt from Plaintiff violated the provisions of the FDCPA including, but not limited to: 15 U.S.C. §1692b, b(1), b(3), c(a)(1), c(a)(3), c(b), d, d(5), e, e(4), e(5) e(10) and e(11).

92. Plaintiff has suffered damages as a result of these violations of the FDCPA.

### COUNT V – Michigan Occupational Code (Apex) as alternative to claims under the Michigan Collection Practices Act

93. Plaintiff incorporates the preceding allegations by reference.

94. Apex is a "collection agency" as that term is defined in the Michigan Occupational Code ("MOC"), M.C.L. § 339.901(b).

95. Plaintiff is a debtor as that term is defined in M.C.L. § 339.901(f).

96. Apex 's foregoing acts in attempting to collect this alleged debt against Plaintiff constitute violations of the MOC including but not limited to the following: M.C.L. § 339.915(a), (e), (f)(I), (f)(ii), (f)(iii), (i), (m), (n) & (q).

97. Plaintiff has suffered damages as a result of these violations of the MOC

98. These violations of the MOC were willful.

### COUNT VI– Michigan Collection Practices Act (Apex)as alternative to claims under the Michigan Occupational Code

99. Plaintiff incorporates the preceding allegations by reference.

100. Apex is a "regulated person" under the Michigan Collection Practices Act ("MCPA"),

M.C.L. § 445.251(g)(xi).

101. Apex 's foregoing acts in attempting to collect this alleged debt against Plaintiff constitute violations of the Michigan Collection Practices Act, M.C.L. § 445.251 *et seq.* including, but are not limited to, the following: (a), (e), (f)(i), (f)(ii), (f)(iii), (i), (m), (n) & (q).

102. Ms. Cline has suffered damages as a result of Apex's violations of the Michigan Collection Practices Act.

103. Apex's violations of the Michigan Collection Practices Act were willful.

### COUNT VII – Fair Debt Collection Practices Act (Vincent)

104. Plaintiff incorporates the preceding allegations by reference.

105. At all relevant times Vincent – in the ordinary course of its business – regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

106. Vincent is a "debt collector" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692a(6).

107. At all times relevant to this complaint, Vincent sought to collect a "consumer" debt from Plaintiff.

108. Vincent actions to collect this alleged debt from Plaintiff violated the provisions of the FDCPA including, but not limited to: §1692b, b(1), b(3), c(a)(1), c(a)(3), c(b), d, d(5), e, e(4), e(5) e(10) and e(11).

109. Plaintiff has suffered damages as a result of these violations of the FDCPA.

### Demand for Jury Trial

110. Plaintiff demands trial by jury in this action.

### Demand For Judgment for Relief

111. *Accordingly, Plaintiff requests that the Court grant:*

  *a.*  *Actual damages for items including emotional distress, mental anguish, frustration, humiliation, and embarrassment.*

  *b.*  *Statutory damages.*

  *c.*  *Statutory costs and attorney fees.*

        Respectfully Submitted,

        LYNGKLIP & ASSOCIATES
        CONSUMER LAW CENTER, PLC

        By: <u>s/ Julie A. Petrik</u>
        Julie A. Petrik (P47131)
        Attorney For Jeni Cline
        24500 Northwestern Highway, Ste. 206
        Southfield, MI 48075
        (248) 208-8864
        JuliePetrik@Att.Net

Dated: October 12, 2009